MULTI–TECH SYSTEMS,
INC., Plaintiff,

v.

HAYES MICROCOMPUTER
PRODUCTS, INC.,
Defendant.

MULTI–TECH SYSTEMS,
INC., Plaintiff,

v.

HAYES MICROCOMPUTER PROD-
UCTS, INC. and Dennis Hayes,
Defendants.

Civ. Nos. 4–88–1106, 4–90–948.

United States District Court,
D. Minnesota,
Fourth Division.

Aug. 21, 1992.

Robert J. Sheran, Lindquist & Vennum, Earl D. Reiland, Wendy M. McDonald, Philip Peter Caspers, Paul E. Lacy, Randall A. Hillson, Merchant Gould Smith Edell Welter & Schmidt, P.A., Minneapolis, Minn., for Multi–Tech Systems.

Wendy J. Wildung, Felicia Jurgens Boyd, Faegre & Benson, Carol Eller Kirby, Paul J. Murphy, William Dennis McKinnie, Jerry B. Blackstock, James W. Hawkins, William M. Ragland, Jr., Dennis McKinnie, Robyn Henry, Powell Goldstein Frazer & Murphy, Atlanta, Ga., for Hayes Microcomputer and Dennis Hayes.

Earl D. Reiland, Wendy M. McDonald, Philip Peter Caspers, Paul E. Lacy, Merchant Gould Smith Edell, Welter & Schmidt, Minneapolis, Minn., for Raghu Sharma.

## ORDER

DOTY, District Judge.

This matter is before the court on:

1. Plaintiff Multi–Tech Systems, Inc.'s ("Multi–Tech") motion for summary judgment in the patent case;

2. Defendant Hayes Microcomputer Products, Inc.'s ("Hayes Inc.") motion for summary judgment in the patent case;

3. Hayes Inc.'s motion for a preliminary injunction in the patent case;

4. Hayes Inc.'s motion for summary judgment in the false advertising and unfair competition case;

5. Defendant Dennis C. Hayes's ("Hayes") motion for summary judgment in the false advertising and unfair competition case;

6. Multi–Tech's appeal of Magistrate Judge Floyd E. Boline's order dated September 10, 1991, in the false advertising and unfair competition case; and

7. Defendants Hayes Inc. and Hayes's appeal of Magistrate Judge Floyd E. Boline's order dated March 19, 1992, in the false advertising and unfair competition case.

Based on the file, record and proceedings herein, Multi–Tech's motion for summary judgment in the patent case will be denied; Hayes Inc.'s motion for summary judgment in the patent case will be granted in part and denied in part; Hayes Inc.'s motion for a preliminary injunction in the patent case will be denied; Hayes Inc.'s motion for summary judgment in the false advertising

and unfair competition case will be denied; Hayes's motion for summary judgment in the false advertising and unfair competition case will be denied; Multi–Tech's appeal of Magistrate Judge Floyd E. Boline's order dated September 10, 1991, is granted in part and denied in part; and Hayes Inc. and Hayes's appeal of Magistrate Judge Floyd E. Boline's order dated March 19, 1992, is denied.

## BACKGROUND

This case arises out of a dispute over the validity of U.S. Patent No. 4,549,302, entitled "MODEM WITH IMPROVED ESCAPE SEQUENCE MECHANISM TO PREVENT ESCAPE IN RESPONSE TO RANDOM OCCURRENCE OF ESCAPE CHARACTER IN TRANSMITTED DATA" (" '302 patent"), issued to Dale Heatherington on October 22, 1985.[1] The '302 patent describes a computer modem with two modes of operation, transparent and command.[2] During the transparent mode the modem transforms data to signals acceptable for transmission by telephone line. During the command mode the modem responds to instructions from the computer operator. The '302 patent describes an invention that safeguards against accidental escape from transparent mode to command mode, which Hayes Inc. alleges is a problem with its competitors' modems. The safeguard is accomplished by using a pause in the transmission of data before and after a predetermined sequence of data.

Other modem manufacturers, including Multi–Tech, began using similar methods of switching between the transparent and command modes. That prompted Hayes Inc. to send a letter to modem manufactures requesting that they take a license under the '302 patent if they wanted to continue to use Hayes Inc.'s patented technology.[3] Some modem manufacturers complied with Hayes Inc.'s request. Other modem manufacturers, however, refused to take a license and filed suit against Hayes Inc. in the Federal District Court of the Northern District of California, seeking a declaration of patent invalidity, unenforceability and non-infringement ("California litigation").[4] On January 21, 1991, the jury in the California litigation returned a verdict for Hayes Inc. The jury found the '302 patent valid, enforceable and willfully infringed by Everex, Ven–Tel and Omnitel.[5]

Multi–Tech chose not to join in the California litigation. Instead, on December 29, 1988, prior to the California court's disposition in the California litigation, Multi–Tech filed this suit against Hayes Inc. seeking a declaratory judgment of patent invalidity,

1. Heatherington assigned the '302 patent to his employer Hayes Inc.

2. A computer modem converts signals from digital to analog form so that signals can be transmitted easily along a telephone line. Modems receive instructions and need to be able to distinguish instructions from messages that are to be converted and transmitted.

3. Multi–Tech received letters from Hayes Inc. asking it to take a license under the '302 patent that are dated October 15, 1986 and November 14, 1988.

4. A number of cases were filed against Hayes in federal court in the Northern District of California seeking a declaration of invalidity, unenforceability, and non-infringement of the '302 patent. U.S. Robotics, Inc. ("USR") filed suit in November 1986. Civil No. C–84–6315. Hayes and USR settled their claims in October 1987, with USR taking a license under the '302 Patent. Microcom, Inc. ("Microcom") filed suit in December 1987. Civil No. C–87–6029. Hayes and

Microcom settled their claims in September 1988, with Microcom taking a license under the '302 patent. Ven–Tel, Inc. ("Ven–Tel") filed suit in January 1988. Additional Suits in which Hayes sued Prometheus Products, Inc. ("Prometheus"), Omnitel, Inc. ("Omnitel") and Everex Systems, Inc. ("Everex") for infringement were consolidated into the Ven–Tel litigation. Hayes and Prometheus settled their claims before that case went to trial, with Prometheus taking a license under the '302 Patent.

5. Everex, Ven–Tel and Omnitel each filed a motion for judgment notwithstanding the verdict. Hayes Inc. filed motions for attorney's fees and expenses, for enhancement of the damages, for prejudgment interest and for an injunction. The court denied the motions that Everex, Ven–Tel and Omnitel filed. *In re Hayes Microcomputer Products, Inc. Patent Litigation*, 766 F.Supp. 818 (N.D.Cal.1991). The court granted each of Hayes Inc.'s motions. The California court, however, stayed the imposition of the injunction pending appeal. The decision in the California litigation is currently on appeal.

unenforceability and non-infringement. In response, Hayes Inc. filed a counterclaim seeking both a declaration of patent validity and a ruling that Multi–Tech is infringing on its '302 patent.[6]

Approximately two years later, Multi–Tech filed a second suit against Hayes Inc. and Dennis Hayes (together "Hayes Inc.")[7] alleging that Hayes Inc.'s advertising and marketing activities are unfair.[8] Specifically, Multi–Tech contends that the Hayes Inc. disseminated a series of false and misleading statements regarding the capabilities and quality of Multi–Tech's products. Multi–Tech also contends that Hayes Inc. disseminated false and misleading statements regarding the capabilities and quality of its own modems containing the escape sequence described in the '302 patent and its V–Series Smartmodem 9600 ("V–Series modem") and the significance of the technological advances embodied in those products. Multi–Tech asserts that Hayes Inc.'s unlawful activities have damaged both the reputation of its products and its position in the market while bolstering Hayes Inc.'s position in the market. Multi–Tech contends that those facts support a cause of action under (1) Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) common law injurious falsehood and unfair competition; (3) the Minnesota Deceptive Trade Practices Act, Minn.Stat. § 325D.43 et seq.; and (4) the Minnesota Unlawful Trade Practices Act, Minn.Stat. § 325D.09 et seq. Multi–Tech seeks both an award of money damages and an injunction prohibiting Hayes Inc. from conducting its false advertising and unfair marketing activities.

Both Multi–Tech and Hayes Inc. now move for summary judgment in the patent case. Multi–Tech alleges that the '302 patent is invalid because (1) the invention described in the '302 patent is anticipated by prior art, which is prohibited under 35 U.S.C. § 102(a); (2) Hayes Inc. began selling the modem containing the invention described in the '302 patent more than one year prior to the filing of the application for the '302 patent, which is prohibited under 35 U.S.C. § 102(b); (3) the invention described in the '302 patent is obvious, which is prohibited under 35 U.S.C. § 103; and (4) the '302 patent does not contain a sufficient written description of the invention as required by 35 U.S.C. § 112. In the alternative, Multi–Tech argues if the patent is valid, the modems it sells do not infringe on the invention described in the '302 patent.

Hayes Inc. moves for summary judgment in the patent case contending that Multi–Tech should be collaterally estopped from pursuing its claims because of Multi–Tech's role in the California litigation. In the alternative, Hayes Inc. maintains that even if Multi–Tech is not collaterally estopped from arguing that the '302 patent is invalid, its '302 patent is valid and that Multi–Tech is infringing on its rights under the '302 patent. Specifically, Hayes Inc. seeks a declaration that the patent is valid under 35 U.S.C. §§ 101, 102, 103 and 112, that the '302 patent is enforceable, that it has not misused the '302 patent, that Multi–Tech has infringed the '302 patent, that a reasonable royalty for the '302 patent is at least 1.75% of Multi–Tech's net sales of its modem products and that Hayes Inc. has complied with its marking obligations for the '302 patent pursuant to 35 U.S.C. § 287. Hayes Inc. also seeks a preliminary injunction prohibiting Multi–Tech from selling modems that utilize the invention specified in the '302 patent unless Multi–Tech takes a license under the '302 patent.

Hayes Inc. also moves for summary judgment on each of the four causes of action in the false advertising and unfair

---

**6.** Hayes Inc. joined Ragu Sharma, the president of Multi–Tech, as an additional counterclaim defendant.

**7.** Multi–Tech has named both Hayes Inc. and Dennis Hayes as defendants in its false advertising and unfair competition causes of action. Unless otherwise specified, the court shall refer only to Hayes Inc. when the matter at issue

pertains equally to Dennis Hayes in his individual capacity and to Hayes Inc.

**8.** Multi–Tech filed its unfair competition claim on December 12, 1990. It amended the complaint on June 13, 1991. On June 24, 1991, the court consolidated the patent case and the unfair competition case.

competition case. Hayes Inc. proffers three alternative theories in support of that motion. First, Hayes Inc. contends that it is entitled to summary judgment because Multi–Tech has submitted no evidence that its activities have caused Multi–Tech damage. Second, Hayes Inc. contends that it is entitled to summary judgment because Multi–Tech has provided no evidence supporting its assertion that the representations it made are not truthful. Finally, Hayes Inc. contends that Multi–Tech has submitted no evidence that its patent or trademark are invalid and therefore, it has the right to promote products bearing its trademark or incorporating its patent. Dennis Hayes, in his individual capacity, contends that the court should dismiss Multi–Tech's false advertising and unfair competition claims against him for the same reasons it should dismiss them against his corporation. In addition, Hayes contends that the court should dismiss Multi–Tech's false advertising and unfair competition claims against him because Multi–Tech has not established that he controlled Hayes Inc.'s advertising and marketing activities.

Multi–Tech also appeals two rulings from an order entered by Magistrate Judge Floyd E. Boline on September 10, 1991. First, Multi–Tech appeals from the magistrate judge's ruling that Hayes Inc. can have access to Multi–Tech's customer list and customers while Multi–Tech does not have reciprocal rights to Hayes Inc.'s customer list and customers. Multi–Tech also objects to the magistrate judge's decision to downgrade the classification of its customer list under the parties' protective order. Second, Multi–Tech appeals from the magistrate judge's determination that it could not amend its complaint to add a claim for punitive damages.

Hayes Inc. also appeals from an order entered by Magistrate Judge Boline on March 19, 1992. Hayes Inc. objects to the magistrate judge's ruling allowing Multi–Tech to serve a subpoena duces tecum on non-party Ziff Communications Company ("Ziff"). Hayes Inc. contends that the subpoena is actually a cloaked discovery request and that the time for discovery expired.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53. With this standard at hand, the court will consider the various motions for summary judgment.

## I. *The Parties' Patent Claims*

### A. Collateral Estoppel

■ Hayes Inc. contends that the court should grant its motion for summary judgment on the validity of the '302 patent because Multi–Tech should be collaterally estopped from re-litigating the issue of the '302 patent's validity. Hayes Inc. contends that the court may properly apply collateral estoppel because Multi–Tech was in sufficient privity with the California litigants because of its membership in the Modem Patent Defense Group ("MPDG").[9]

Multi–Tech contends that application of collateral estoppel is inappropriate because it was not in privity with the California litigants. First, Multi–Tech notes that the MPDG was not a party to the California litigation. Second, Multi–Tech contends that apart from a few minor contacts with the MPDG and one initial payment to join the group, it did not participate in either the MPDG or the California litigation.

The court finds that Hayes Inc.'s reliance on the theory of collateral estoppel is misplaced. Multi–Tech was not in sufficient privity with the California litigants to preclude it from relitigating the '302 patent's validity. *See e.g., Blonder–Tongue Lab., Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971) ("Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position."); *Benson and Ford, Inc., v. Wanda Petroleum Co.*, 833 F.2d 1172, 1175 (5th Cir.1987) (refusing to apply collateral estoppel against a non-party where the plaintiffs in the first and second suit had the same attorney, the plaintiff in the second suit was a witness in the first suit, and the plaintiffs from both suits met to discuss issues of common interest in the suits); *Virginia Hospital Ass'n. v. Baliles*, 830 F.2d 1308, 1312–13 (4th Cir.1987) (refusing to apply collateral estoppel against a non-party where an association, to which the plaintiffs in both the first and second suits belonged, supplied the plaintiffs in both suits with evidence and participated in some pretrial proceedings); *Ponderosa Dev. Corp. v. Bjordahl*, 787 F.2d 533, 536–37 (10th Cir.1986), (refusing to apply collateral estoppel to a non-party where the party participated as a witness in the first trial and had access to all of the discovery matters produced for that trial).

Although the California judgment does not prohibit Multi–Tech from seeking a declaration of patent invalidity, the presumption in favor of the '302 patent is strengthened by the prior adjudication affirming its validity. *Farmhand v. Anel Eng'g Indus.*, 693 F.2d 1140, 1143–44 (5th Cir.1982) ("[P]resumption in favor of the ... patent is further supported by prior adjudications ... affirming its validity."); *Illinois Tool Works, Inc. v. Foster Grant Co., Inc.*, 547 F.2d 1300, 1302 (7th Cir.1976) (once a court has ruled that a patent is valid, a nonparty to that action challenging validity in a subsequent action "has the burden of presenting 'persuasive new evidence' of invalidity and demonstrating that there is a 'material distinction' between the cases." (citations omitted)), *cert. denied*, 431 U.S. 929, 97 S.Ct. 2631, 53 L.Ed.2d 243 (1977); *Safe Flight Instrument Corp. v. McDonnell–Douglas Corp.*, 482 F.2d 1086, 1089–90 (9th Cir.1973) ("[P]rior adjudications as to the validity of a patent 'are entitled to respectful consideration and in doubtful cases they are strongly persuasive ...' But the respect which should be accorded a prior adjudication as to the validity of a patent does not, absent estoppel running against the parties to the prior litigation, supplant the primary duty of a court to dispose of cases according to the law and facts of the particular case before it."), *cert. denied*, 414 U.S. 1113, 94 S.Ct. 843, 38 L.Ed.2d 740

---

**9.** Modem manufacturers established the MPDG in response to Hayes Inc.'s letters requesting that modem manufacturers take a license under the '302 patent. The manufacturers believed that the formation of the MPDG would facilitate the sharing of advice and resources in their attempts to obtain a judgment that the '302 patent was invalid and unenforceable.

(1973). However, if Multi–Tech relies on pertinent evidence or argument that was not considered in the California litigation, the weight given to that prior adjudication must be diminished. *Mast, Foos & Co. v. Stover Mfg. Co.*, 177 U.S. 485, 488–89, 20 S.Ct. 708, 709–10, 44 L.Ed. 856 (1900) ("Comity ... has no application to questions not considered by the prior court, or in patent cases, to alleged anticipated devices which were not laid before that court. As to such the action of the court is purely original, though the fact that such anticipatory devices were not called to the attention of the prior court is likely to open them to suspicion."); *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 710 (Fed.Cir. 1983) ("[T]he prior holding of validity is not necessarily inconsistent with the subsequent holding of invalidity.... The difference in result could be attributable to many neutral facts: e.g., different prior art references or different records.... [W]e do not believe that the existence of a seemingly inconsistent prior holding on 'validity' should change the inquiry from a full and fair opportunity to litigate to one of correctness; rather, it should serve only as a 'red flag warning' to the court to apply the full and fair criteria more carefully."). Based on the foregoing, Multi–Tech will have a full and fair opportunity to litigate the validity of the '302 patent. The weight the court will accord the prior adjudication will depend on the evidence that Multi–Tech submits and the arguments that it makes in support of its claims.

**B. Presumption of Patent Validity**

The '302 patent and each of its claims carries with it an independent presumption of validity. 35 U.S.C. § 282; *Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1266–67 (Fed.Cir. 1991). Therefore, the burden of showing the invalidity of a patent rests upon Multi–Tech and that burden is a heavy one. *Nutrition 21 v. United States of America*, 930 F.2d 867, 869 (Fed.Cir.1991); *Bausch & Lomb, Inc. v. Barnes–Hind/Hydrocurve, Inc.*, 796 F.2d 443, 446 (Fed.Cir.1986), *cert. denied*, 484 U.S. 823, 108 S.Ct. 85, 98 L.Ed.2d 47 (1987). Multi–Tech must overcome the statutory presumption of validity by clear and convincing evidence based on undisputed facts. *Quad Envtl. Technologies Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 872 (Fed.Cir.1991); *Tillotson, Ltd. v. Walbro Corp.*, 831 F.2d 1033, 1036 (Fed.Cir.1987); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed.Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987).

**C. Anticipation**

**1. 35 U.S.C. § 102(a)**

Multi–Tech contends the '302 patent is invalid because three prior art references, the *DCS Autodin Interface and Control Criteria*, DCA Circular 370–D175–1 ("Autodin"), published and available in October, 1970, U.S. Patent No. 3.331,704 (" '704 patent"), issued in 1967 and the CCITT Provisional Recommendation X.28 ("X.28"), issued in 1977, anticipate Claims 1, 4 and 5 of the '302 patent under 35 U.S.C. § 102(a).[10]

---

**10.** Hayes Inc. contends that anticipation under § 102(a) is not before the court because Multi–Tech did not indicate in discovery that it intended to argue that the '302 patent is invalid under § 102(a). The court disagrees. Hayes Inc. cannot use Multi–Tech's responses to interrogatories served early in the discovery process of this case to limit the issues before the court. Hayes Inc.'s patent expert's analysis of patent validity under § 102(a) and its arguments in its memoranda of law regarding anticipation under § 102(a) demonstrate that it apparently was well aware of Multi–Tech's argument under § 102(a). The court thus concludes that Hayes Inc. is not prejudiced by the court's consideration of Multi–Tech's argument under § 102(a) and that the court will consider Multi–Tech's argument under § 102(a).

Hayes Inc. makes similar arguments under subsections (d), (e), (f) and (g) of § 102 and moves for summary judgment on those provisions. Multi–Tech it is not asserting defenses under §§ 102(c), (d), (e) and (f). Therefore, the court finds that a ruling on §§ 102(c), (d), (e) and (f) is unnecessary. Multi–Tech contends that it is asserting a defense under § 102(g) and that it is entitled to summary judgment on that provision. Beyond that assertion, however, Multi–Tech did not provide any discussion of patent validity under § 102(g). Despite Multi–Tech's failure to provide any discussion on § 102(g), the court denies Hayes Inc.'s motion for summary judgment on that provision because the court's analysis of Multi–Tech's claims under §§ 102(a) and (b) also apply to § 102(g). Because the court concludes that a material fact

Hayes Inc. counters that the three prior art references do not anticipate the invention described in the '302 patent and that its patent is valid under § 102(a).

■ 35 U.S.C. § 102(a) provides that:

A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent.....

Anticipation under § 102(a) requires that each element of the claimed invention be disclosed in a single prior art reference. *Continental Can Co.*, 948 F.2d at 1267; *Kalman v. Kimberly–Clark Corp.*, 713 F.2d 760, 771 (Fed.Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984). If more than one reference is required to establish that the claimed invention was previously known to others, the court cannot find anticipation under § 102(a). *Id.* In addition, the court cannot find anticipation if the prior art reference is not in the possession of the public. *Kalman*, 713 F.2d at 771 (citing *In re Brown*, 329 F.2d 1006, 1011 (C.C.P.A.1964)). The court shall discuss each reference seriatim.

a. Autodin

■ Professor Larry Kinney, Multi–Tech's patent expert, sets forth a chart comparing claim one of the '302 patent with the Autodin prior art reference. Kinney states that the Autodin teaches an escape mechanism whereby the receiving device escapes to command mode only if it receives an escape command consisting of predetermined pause in the transmission of data followed by a set of control characters. Kinney concludes that this same mechanism is incorporated into the '302 patent. Kinney additionally concludes that claims four and five of the '302 are essentially the same as claim one of the '302 patent. Multi–Tech thus contends that the Autodin teaches the escape invention described in claims 1, 4 and 5 of the '302 patent and that the '302 patent is invalid under § 102(a).

Professor John Cioffi, Hayes Inc.'s patent expert, contends that Professor Kinney's comparison of the Autodin reference to the '302 patent does not present the correct teachings of the Autodin.[11] Cioffi contends that the Autodin switches to its command mode in response to a pause in the transmission of data alone and not in response to a pause in conjunction with a predetermined set of escape characters. Hayes Inc. thus concludes that the Autodin reference does not anticipate the invention in the '302 patent.

The court finds that a material fact dispute exists regarding whether the Autodin reference anticipates the '302 patent. The court is unable to determine as a matter of law whether the Autodin reference anticipates the invention described in the '302 patent.[12] The court thus denies that portion of Multi–Tech's motion for summary judgment that claims that the Autodin ref-

---

dispute exists regarding the validity of the patent under §§ 102(a) and (b), *see infra*, the court concludes that a material fact dispute exists regarding the validity of the patent under § 102(g).

11. Multi–Tech contends that the court should disregard Cioffi's declaration because it is inconsistent with his prior deposition testimony. Multi–Tech contends that Cioffi admitted that the '302 patent is not novel in his deposition and that to the extent that his more recent declaration is inconsistent with his prior deposition, it should not be considered. *See Garnac Grain Co. v. Blackley*, 932 F.2d 1563, 1568 (8th Cir. 1991) ("The purpose of summary judgment motions ... is served by a rule which prevents a party from creating issues of credibility by allowing one of its witnesses to contradict his own prior testimony." (quoting *Adelman-*

*Tremblay v. Jewel Cos., Inc.*, 859 F.2d 517, 521 (7th Cir.1988)). Although Multi–Tech's recitation of the law is correct, the court finds that Cioffi's declaration does not contradict his deposition testimony. The court will thus consider Dr. Cioffi's declaration.

12. The Autodin reference was submitted into evidence in the California litigation. Apparently, however, discussion regarding the Autodin reference was limited in the California litigation, *see* Hayes Inc. appellate brief at 17, and the jury did not consider whether the Autodin reference anticipates the '302 patent under § 102(a). Accordingly, on the issue of anticipation under § 102(a), the court accords little weight to the fact that the Autodin reference was submitted into evidence in the California litigation.

erence anticipates the '302 patent under § 102(a). Similarly, because a material fact dispute exists, Hayes Inc.'s motion for a declaration of patent validity under § 102(a) is denied.

### b. '704 patent & X.28 reference

Multi–Tech contends that even if the Autodin reference does not anticipate the invention claimed in the '302 patent, the '704 patent or the X.28 reference anticipate the '302 patent.[13] Multi–Tech alleges that the '704 patent teaches a system for switching between a mode of communication of voice signals and a mode of communication of data signals using a predetermined period of no voice signals in combination with a predetermined keying signal. Multi–Tech alleges that the X.28 reference teaches the use of a break signal in conjunction with a pause of a particular length to escape from a data transfer mode to command mode. Multi–Tech thus contends that the inventions embodied in the '704 patent and the X.28 reference describe the same basic concept as the invention claimed in the '302 patent and that summary judgment under § 102(a) is appropriate.

The court finds that Multi–Tech has not met its burden of showing that either the '704 patent or the X.28 reference anticipate the '302 patent. Multi–Tech's general statements alleging that the '704 patent and the X.28 reference teach the same concept as the '302 patent do not constitute the detailed analysis of the prior art that is needed to overcome the presumption of validity of the '302 patent and to demonstrate

that summary judgment is warranted. *See Kalman*, 713 F.2d at 771 ("A party asserting that a patent is anticipated under 35 U.S.C. § 102 must ... show that each element of the claim in issue is found, either expressly described or under principles of inherency, in a single prior art reference...."). However, the court's independent review of those references indicates that a material fact dispute exists regarding whether those references anticipate the '302 patent.[14] Multi–Tech thus may present evidence on those references at trial, but that portion of its motion for summary judgment that contends the '704 patent and the X.28 reference anticipate the '302 patent is denied.

### 2. 35 U.S.C. § 102(b)

Multi–Tech contends that the '302 patent is invalid under § 102(b) because Hayes Inc. began selling modems containing the purported invention described in the '302 patent more than one year prior to the October 11, 1983, filing date of the application for the '302 patent.[15] 35 U.S.C. § 102(b) bars entitlement to a patent when:

(b) the invention was ... described in a printed publication in this ... country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States ...

Hayes Inc. contends that the '302 patent is not invalid under § 102(b) because Autodin does not describe the invention and because its October 11, 1983, application is entitled to the June 15, 1981, filing date of a related application for the '302 patent.[16]

---

**13.** The '704 patent and the X.28 reference were not submitted into evidence in the California litigation. Accordingly, the court accords no weight to the prior adjudication in its analysis of those prior art references.

**14.** Hayes Inc. also only provided a cursory analysis of the '704 patent and the X.28 reference. Hayes Inc.'s expert made general statements that the X.28 reference's escape mechanism is not the type of escape sequence described in the '302 patent and that only a marginal analogy can be drawn between the escape sequence used in the '704 patent and that used in the '302 patent. Beyond those statements, Hayes Inc. provided little additional analysis.

**15.** Multi–Tech also contends that the '302 patent is invalid under 35 U.S.C. § 102(b) because Autodin described the purported invention more than one year before the application for the '302 patent was filed. The court will not rule on that argument because the court has determined that a material fact dispute exists as to whether Autodin describes the invention embodied in the '302 patent. The court notes, however, that if it is determined that the Autodin reference does anticipate the '302 patent, then the '302 patent would be invalid under § 102(b).

**16.** It is undisputed that Hayes Inc. began selling modems containing '302 patent technology at about the same time it filed its June 15, 1981, application.

Patent law provides that when certain conditions are met, a provisional application is entitled to the earlier filing date of a related application. 35 U.S.C. § 120.[17] A required condition for this benefit is that the invention be "disclosed in the manner provided by the first paragraph of section 112 ... in an application previously filed ..."[18] *Id.*

Multi–Tech contends that the June 15, 1981, application did not contain a sufficient description of the alleged new escape sequence mechanism under § 112.[19] In support of its argument, Multi–Tech cites a portion of Dale Heatherington's, the inventor of the '302 patent, deposition.

Q. Mr. Heatherington, did you review the patent application that was filed on June 15th, 1981, that is the grandparent application of the one that resulted in the '302 patent?

A. Yes.

Q. Did you read it in its entirety?

A. Yes.

.    .    .    .    .

Q. Did you make any change in it?

A. I don't remember.

Q. Did you notice when you originally reviewed it in 1981 that it had no claims to an escape sequence mechanism?

A. Yes, I do have some recollection of that.

Q. Did you notice when you reviewed it in 1981 that it had no abstract which called out any elements of an escape sequence mechanism?

A. I don't recall at that time whether I realized that or not, I don't know.

Q. Did you notice that it had no description of the way in which your escape sequence mechanism was implemented when you reviewed it in 1981?

.    .    .    .    .

A. As I recall ... how the escape sequence operated, it didn't get into details of programming code.

Q. Did it get into even the broad outlines of the program?

A. No. It just basically said you had to wait a second, you had to give it three characters, and then you had to wait another second.

Q. To use your term earlier in this testimony, it defined the idea—

A. Yes.

Q. But not how to implement it; is that right?

A. Well, yes. But implementation is trivial, anybody "skilled in the art" could implement it.

Heatherington Aff. at p. 34–36, July 30, 1991. Multi–Tech contends that the preceding portion of Heatherington's deposition demonstrates that the 1981 application does not describe the invention with sufficient specificity to satisfy § 112. Multi–Tech, however, apparently did not provide the court with a copy of the 1981 application so that it could determine whether the 1981 application described the alleged invention in a manner that satisfies the first paragraph of § 112.

**17.** 35 U.S.C. § 120 provides:
An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States, or as provided by section 363 of this title, by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application.

**18.** The first paragraph of 35 U.S.C. § 112 provides that:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

**19.** Multi–Tech also mentions in its memorandum that the October 11, 1983, patent application does not contain a description of the invention that meets the requirements under § 112. Multi–Tech, however, makes no such formal argument.

Hayes Inc. asserts that its patent is valid under 35 U.S.C. § 102(b) because it received the benefit of the June 15, 1981, application filing date. Hayes Inc., however, provides no additional information in support of its assertion. The court thus concludes that it is unable to resolve the dispute under § 102(b) and that a fact dispute exists regarding whether the 1981 patent application sufficiently described the claimed invention so that the '302 patent is not invalid under § 102(b). Therefore, Multi–Tech's motion for summary judgment under § 102(b) is denied.[20]

### D. Obviousness

■ Multi–Tech alleges that the '302 patent is invalid because claims 2 and 3 are obvious under 35 U.S.C. § 103. 35 U.S.C. § 103 prohibits the issuance of a patent

if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

Whether a patent is obvious under § 103 is a question of law that is based on factual findings. *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966).

■ The court must consider the following factors in making its factual findings regarding obviousness:

(1) the scope and content of the prior art;

(2) the differences between the prior art and the claimed invention;

(3) the level of ordinary skill in the art to which the invention pertains; and

(4) objective evidence that serves as indica of nonobviousness, commonly referred to as "secondary considerations." *Graham,* 383 U.S. at 17–18, 86 S.Ct. at 693–94. Such secondary considerations include evidence of (a) the invention's satisfaction of

previously recognized and unsolved needs; (b) acceptance and copying of the invention by those concerned with the subject matter; (c) the commercial success of the invention; and (d) the failure of others to create the claimed invention. *Id.; Hybritech,* 802 F.2d at 1380. The court must consider those secondary considerations of obviousness before it can reach a conclusion of law. *Hybritech,* 802 F.2d at 1380. Those factors can be the most probative evidence of nonobviousness in the record. *Custom Accessories, Inc. v. Jeffrey–Allan Indust., Inc.,* 807 F.2d 955, 960 (Fed.Cir.1986). However, the absence of such considerations "does not preclude a finding of nonobviousness because such evidence is not a requirement for patentability." *Id.* Once the court sets forth the factual findings required under *Graham,* the *Graham* inquiry requires the court to ascertain whether those facts establish by clear and convincing evidence that the claimed invention as a whole would have been obvious to a person of ordinary skill in the art to which the invention pertains at the time the invention was made. *Panduit Corp. v. Dennison Mfg. Co.,* 810 F.2d 1561, 1569 (Fed.Cir. 1987), *cert. denied,* 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987).

■ Multi–Tech contends that claims 2 and 3 are obvious because the invention set forth in those claims is only a trivial modification to the invention described in claim 1 and that in view of the prior art that anticipates claim 1, claims 2 and 3 are obvious. Multi–Tech, however, provided no additional evidence of obviousness and it did not mention or perform the obviousness inquiry under *Graham.* Based on the court's conclusion that a fact dispute exists as to whether claim 1 is anticipated by prior art and because Multi–Tech failed to provide the court with sufficient evidence to perform the analysis required under *Graham,* the court denies Multi–Tech's motion under § 103. The court notes that had Multi–

**20.** The jury in the California litigation apparently found that the '302 patent contained an adequate description. Hayes Inc. however, failed to discuss that judgment in its memorandum Although the court gives that prior adjudication on the issue of adequate description some weight, without more, the court is unable to determine a more precise amount of deference to accord the prior judgment. Thus, the prior judgment does not control the court's analysis of whether the '302 patent contains an adequate description.

Tech attempted to undertake an obviousness analysis under *Graham*, its burden of establishing that the case is ripe for summary judgment on the obviousness issue would have been heavier because the issue of obviousness was litigated in the California litigation and the Autodin reference, the primary prior art reference upon which Multi–Tech relies, was introduced into evidence as proof of obviousness in that proceeding. However, that prior adjudication is not dispositive of Hayes Inc.'s motion for a declaration of patent validity under § 103 because the additional prior art references introduced in this litigation and the evidence indicating that discussion of the Autodin reference was limited in the California litigation warrant that the court at most accord moderate weight to the prior judgment. Accordingly, Hayes Inc.'s motion for summary judgment on the issue of obviousness under § 103 is denied.

### E. Infringement

Multi–Tech contends that even if the '302 patent is valid and enforceable, its products do not infringe on any of the claims of the '302 patent. Hayes Inc. counters that Multi–Tech's products do infringe on the claims of its '302 patent. Infringement may be found under either of two theories, literal infringement or infringement under the doctrine of equivalents. Hayes Inc., the party asserting infringement, has the burden of proving infringement by a preponderance of the evidence. *Uniroyal, Inc. v. Rudkin Wiley Corp.*, 837 F.2d 1044, 1054 (Fed.Cir.1988) (citation omitted), *cert. denied*, 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988).[21]

#### 1. Literal Infringement

Literal infringement requires that every limitation of a patent claim must be found in the alleged infringing product. *Uniroyal*, 837 F.2d at 1054 (citation omitted). A literal infringement analysis requires the court to determine both the scope of the patent's claims and whether one of those claims encompasses the alleged infringing product. *Id.* In addition, "where [as in the case of the '302 patent, a patent's claim is] expressed as a means for performing a stated function, the court must compare the accused structure *with the disclosed structure*, and must find equivalent *structure* as well as *identity* of claimed *function* for that structure." *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934 (Fed.Cir.1987) (emphasis in the original) (citations omitted).

The court has determined that it is unable to complete such an inquiry in this case. Through affidavits accompanying its memorandum in support of its summary judgment motion, Hayes Inc. asserts that its scientists have examined Multi–Tech's products, that those products operate in the same manner as the products that were found in the California litigation to infringe on the '302 patent and therefore, that those products infringe at least claims one and two of the '302 patent. *See* Hawkins Aff., Exh. 37–38. Beyond those broad conclusions, however, Hayes Inc. has not provided the court with an analysis demonstrating literal infringement. Hayes Inc. also failed to supply the court with sufficient material for it to undertake such an analysis itself. In addition, Multi–Tech has submitted information that apparently creates a material fact dispute. *See* Zarley aff. at ¶ 4. The court thus concludes that Hayes Inc. has not met its burden of establishing by a preponderance of the evidence that Multi–Tech's products infringe on the '302 patent's claims and that a fact dispute exists regarding whether Multi–Tech's modems literally infringe the '302 patent. Likewise, Multi–Tech has not established that its products do not infringe on Hayes Inc.'s rights under the '302 patent. Accordingly, because a material fact dispute regarding infringement exists, the parties' cross-motions for summary judgment on the issue of literal infringement of the '302 patent are denied.

---

**21.** The issue of infringement was considered in the California litigation. However, Hayes Inc. has not shown that Multi–Tech's products are substantially similar to the products considered in the California litigation. The court thus shall accord little weight to the California judgment on the issue of infringement.

## 2. Infringement under the Doctrine of Equivalents

■ Under the doctrine of equivalents, Multi–Tech's modems infringe on the '302 patent's claims if the modems "perform[ ] substantially the same function, in substantially the same way to achieve the same result" as the invention described in the '302 patent. *Uniroyal*, 837 F.2d at 1057 (citing *Graver Tank & Mfg. Co. v. Linde Air Prod. Co.*, 339 U.S. 605, 608–09, 70 S.Ct. 854, 856–57, 94 L.Ed. 1097 (1950)). "Whether a device is equivalent to a claimed invention is a factual inquiry." *Id.* (citation omitted).

Multi–Tech's expert, Donald Zarley, opines that Multi–Tech's products do not perform substantially the same function or achieve substantially the same result because a device incorporating the invention embodied in the '302 patent will only escape from transparent mode to command mode if the escape characters are accompanied by the predetermined pauses in the transmission of data and Multi–Tech's products will escape even if the period of no data transmission varies.[22] Hayes Inc.'s expert, Paul Enlow, opines that Zarley is wrong and that Multi–Tech's products infringe under the doctrine of equivalents because Multi–Tech's escape mechanism performs substantially the same function, escaping from a transparent mode to a command mode, in substantially the same way, by providing guard times to protect against accidental escape when an escape sequence is part of the data transmission, to achieve substantially the same result, protection from accidental escape. The court is unable to resolve the experts' varying interpretations of the mechanisms at issue. The court thus finds that a material fact dispute exists and that the parties' cross-motions for summary judgment on infringement under the doctrine of equivalents are denied.

## F. Remaining Patent Disputes[23]

### 1. Patentable Invention

■ Hayes Inc. moves for summary judgment on the issue that its patent is valid under 35 U.S.C. § 101. 35 U.S.C. § 101 provides:

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

Based on the court's discussion regarding anticipation under 35 U.S.C. § 102 and obviousness under 35 U.S.C. § 103, the court concludes that a material fact dispute exists regarding whether the invention described in the '302 patent is new. Therefore, Hayes Inc.'s motion for summary judgment under § 101 is denied.

### 2. Patent Misuse

■ Hayes Inc. moves for summary judgment on the issue of patent misuse. Hayes Inc. contends that Multi–Tech presented no facts indicating that it misused the '302 patent and that summary judgment on this issue is appropriate. The court agrees. Multi–Tech asserts that Hayes Inc. never believed the escape command embodied in the '302 patent was an invention and therefore, that enforcement of that patent constitutes misuse. Multi–Tech cites no case law in support of its position and the court finds that a Hayes Inc.'s enforcement of its patent issued by the United States Patent Office does not constitute misuse. Accordingly, the court concludes that summary judgment is warranted and grants Hayes Inc.'s motion on the issue of misuse.

### 3. Fraud on the United States Patent Office

Hayes Inc. also moves for summary judgment on Multi–Tech's contention that

---

**22.** Zarley stated that he was unable to determine if the invention in the '302 patent performed its function in substantially the same way as Multi–Tech's products because the '302 patent did not disclose an adequate description of how the invention operated and that the '302 patent was invalid under 35 U.S.C. § 112.

**23.** The court declines to rule on Hayes Inc.'s motion for summary judgment seeking a declaration that it complied with its marking obligations under 35 U.S.C. § 287 because Multi–Tech does not assert improper marking as a defense and therefore, a ruling on that issue is unnecessary.

the '302 patent is invalid because the inventor of the '302 patent committed fraud on the United States Patent Office. Multi–Tech contends that the patent is unenforceable because the inventor of the mechanism embodied in the '302 patent misled the patent office during the prosecution of the patent. Multi–Tech, however, stated in its memorandum in support of its motion for summary judgment that it provided argument on this issue solely for the purpose of providing the court with background information on the history of the '302 patent. The court thus declines to rule on whether the patent is invalid because of fraud on the patent office.

### 4. Reasonable Royalties

Hayes Inc. moves the court for an order setting a reasonable royalty at a minimum of 1.75% of Multi–Tech's net sales of infringing modem products. In support of its request, Hayes Inc. relies upon the findings of the jury in the California litigation, which found a reasonable royalty rate of 1.75% an appropriate measure of damages for the infringing modem manufacturers. Hayes Inc. seeks only a determination of the minimum reasonable royalty because it notes that a jury may assess additional damages against an infringer. *See Stickle v. Heublein, Inc.,* 716 F.2d 1550, 1563 (Fed. Cir.1983); *Panduit Corp. v. Stahlin Brothers Fibre Works,* 575 F.2d 1152, 1158 (6th Cir.1978).

Multi–Tech asserts that if the '302 patent is adjudged valid and its products are found to infringe on that patent, a reasonable royalty for the '302 patent is at most $20,000. Multi–Tech contends that a royalty of at most $20,000 is warranted because it is a modem industry standard to license technological developments for a small license fee, especially if the technology is proposed as a standard for the industry and that Hayes Inc. has succeeded in making the '302 patent technology an industry standard. In addition, Multi–Tech contends that a relatively small license fee is warranted because the inventor of the '302 patent admitted that the development of the escape command embodied in the '302 patent is not a significant modem development and because Hayes Inc.'s patent expert admitted that the escape command was probably not the "salient feature" leading to Hayes Inc.'s successful sales of its modems. Moreover, Multi–Tech contends that a relatively small royalty is warranted because Hayes Inc. has a policy of offering licenses of its technology for a relatively small one-time fee.[24] Finally, Multi–Tech contends that Hayes Inc. has licensed the '302 patent to other modem manufactures for less than 1.75% and that the finding in California does not support a royalty of 1.75% in this case because that case involved different parties, issues and evidence.

The court finds that the issue of a reasonable royalty is not ripe for decision. First, the '302 patent has not been found valid and infringed. Second, even if it were appropriate to calculate a reasonable royalty at this stage of the litigation, the court would be unable to do so because the record is too incomplete to calculate a reasonable royalty. A reasonable royalty is based on a "hypothetical royalty resulting from arm's length negotiations between a willing licensor and a willing licensee" taking place at the time the infringement began. *Hanson v. Alpine Valley Ski Area, Inc.,* 718 F.2d 1075, 1078 (Fed. Cir.1983). "[T]he determination of a reasonable royalty must be based on the entirety of the evidence and the court is free to, indeed, must reject the royalty figures proffered by the litigants ... where the record as a whole leads the court to a

---

**24.** In support of its contention that Hayes Inc. has a policy of offering licenses under its technology for a small license fee, Multi–Tech submits a letter from Hayes Inc. to a modem manufacturer interested in its "space/backspace recognition sequence," an invention different from the one at issue in this case. In that letter, Hayes Inc. states:

"Should any patents issue which have claims covering apparatus which implements this recognition sequence, Hayes will provide a paid up license to anyone under such patents, to practice the recognition sequence which is stated in the standard, for a one-time license fee of one thousand dollars ($1,000.00) U.S." Letter from Hayes Inc. to Racal–Milgo, Inc., dated June 12, 1987.

different figure." *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 926 F.2d 1161, 1168 (Fed.Cir.1991). Various factors are relevant to the determination of a reasonable royalty, including prior and existing licenses under the patent, industry standards on comparable patents, the patent owner's policy and the relation between the parties. *See e.g. TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 899–900 (Fed. Cir.1986), *cert. denied*, 479 U.S. 852, 107 S.Ct. 183, 93 L.Ed.2d 117 (1986); *Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1557 (Fed.Cir.1986); *Trans–World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed.Cir.1984); *Georgia–Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y.1970), *modified* and *aff'd*, 446 F.2d 295 (2d Cir.), *cert. denied*, 404 U.S. 870, 92 S.Ct. 105, 30 L.Ed.2d 114 (1971). The jury or court need not employ any particular method of calculating a reasonable royalty. *Studiengesellschaft Kohle m.b.H. v. Dart Indus. Inc.*, 666 F.Supp. 674, 680 (D.Del.1987), *aff'd* 862 F.2d 1564 (Fed.Cir.1988). Thus, additional evidence is needed to determine the royalty rate that the parties would have negotiated had Multi-Tech taken a license under the '302 patent. Accordingly, the court denies the parties' cross-motions for summary judgment regarding a reasonable royalty.

II. *Hayes Inc.'s Motion for a Preliminary Injunction*

■ Hayes Inc. moves the court for a preliminary injunction under 35 U.S.C. § 283, prohibiting Multi-Tech from selling any modems that infringe on its '302 patent. The court must consider four factors in considering whether to grant Hayes Inc.'s motion for a preliminary injunction:

1. Is there a substantial probability that Hayes Inc. will prevail on the merits;

2. Is there a substantial threat that Hayes Inc. will suffer irreparable harm if its requested relief is not granted;

3. Does the irreparable harm to Hayes Inc. outweigh any potential harm that granting a preliminary injunction may cause Multi-Tech; and

4. The public interest.

*Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 (Fed.Cir.1988); *Pretty Punch Shoppettes v. Hauk*, 844 F.2d 782, 783 (Fed.Cir.1988) (citing *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir.1981)). No single factor is dispositive of the court's inquiry and the court "must weight and measure each factor against the other factors and against the form and magnitude of the relief requested." *Hybritech*, 849 F.2d at 1451.

A. Likelihood of Success on the Merits

Although the presumption of validity of the '302 patent places the burden of going forward and the ultimate burden of persuasion at trial on Multi–Tech, *see* 35 U.S.C. § 282, on a motion for a preliminary injunction, Hayes Inc. carries the burden of showing its likelihood of success on the merits with respect to the patent's validity, enforceability and infringement because of the extraordinary nature of that type of relief. *Nutrition 21 v. United States*, 930 F.2d 867, 869 (Fed.Cir.1991); *H.H. Robertson, Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 388 (Fed.Cir.1987) ("[T]he burden is always on the movant to demonstrate entitlement to preliminary relief."). Hayes Inc. must establish a likelihood of success on the merits with respect to the validity of its patent and with respect to infringement of its patent. *Hybritech*, 849 F.2d at 1451. Hayes Inc., however, need not prove validity or infringement beyond all question in order to obtain a preliminary injunction. *Illinois Tool Work, Inc. v. Grip–Pak, Inc.*, 906 F.2d 679, 682 (Fed.Cir.1990).

1. Validity

Hayes Inc. substantially relies on the California judgment of validity to support its argument that it is likely to succeed on the merits on the issue of the validity of the '302 patent. The court, in its discretion, may "give considerable weight to a prior adjudication of validity in determining the likelihood of success on the merits ..." *Hybritech*, 849 F.2d at 1452. Such reliance, however, is limited to situations involving similar issues of fact and law, *H.H. Robertson*, 820 F.2d at 388, and thus, in

this case, the court finds that Hayes Inc.'s reliance on the California litigation is misplaced. The California litigation did not encompass Multi–Tech's anticipation argument under 35 U.S.C. § 102(a) and the '704 patent and the X.28 prior art references were not in evidence. In addition, although the Autodin reference was submitted into evidence in the California litigation, evidence suggests that discussion of that reference was limited. The court thus concludes that the prior adjudication of validity provides little indication of the likelihood of success on the merits regarding the issue of the validity of the '302 patent.[25]

### 2. Infringement

Hayes Inc. also has failed to demonstrate a likelihood of success on the issue of infringement of the '302 patent. As stated in the court's analysis of Hayes Inc.'s motion for summary judgment on the issue of infringement, Hayes Inc. asserts that its scientists have examined Multi–Tech's products, that those products operate in the same manner as the products that were found in the California litigation to infringe on the '302 patent and therefore, that those products infringe at least claims one and two of the '302 patent. Beyond those general conclusions, however, Hayes Inc. has not provided the court with an analysis demonstrating literal infringement. The court thus concludes that Hayes Inc. has not demonstrated a likelihood of success on the issue of literal infringement.

Hayes Inc. has also failed to demonstrate a likelihood of success on the issue of infringement under the doctrine of equivalents. A fact dispute exists regarding whether Multi–Tech's products perform substantially the same function and achieve substantially the same result as modems using the '302 patent technology. Hayes Inc. thus has failed to meet its burden of making a clear showing that it is likely to succeed under the doctrine of equivalents. The court thus concludes that because Hayes Inc. failed to show a likelihood of success on the merits with respect to either the validity of the patent or the infringement of the patent, this first factor weighs in favor of denying the motion for a preliminary injunction.

### B. Irreparable Harm

Hayes Inc. sets forth five grounds in support of its contention that it will suffer irreparable harm if the court does not issue a preliminary injunction. First, Hayes Inc. contends that it enjoys a presumption of irreparable harm based on its showing on the issues of patent validity and infringement. Second, Hayes Inc. contends that Multi–Tech will be unable to satisfy any judgment that it might obtain against Multi–Tech and that the court should issue an injunction so that the damage amount will not increase. Third, Hayes Inc. contends that its position in the market is being irreparably harmed because Multi–Tech's sale of infringing modems is eroding its market share of modem sales. Fourth, Hayes Inc. contends that it is being irreparably harmed because Multi–Tech's actions are infringing on its right to license the '302 patent and to obtain concessions in return for such licenses. Finally, Hayes Inc. contends that denial of its motion for a preliminary injunction will encourage others to infringe.

The court finds that Hayes Inc.'s proffered grounds do not adequately establish the threat of irreparable harm should the court deny its request for a preliminary injunction. First, Hayes Inc. does not enjoy a presumption of irreparable harm because it has failed to establish a clear showing of validity and infringement. *Nutrition 21*, 930 F.2d at 871 ("[W]ithout a

---

**25.** The court notes that Hayes Inc. makes no argument under the substantive patent law provisions that it made in its motion for summary judgment on the validity, enforceability and infringement of the '302 patent. Even if Hayes Inc. had raised such an argument in support of its position that it is likely to succeed on the merits on the issue of the '302 patent's validity, the court would find that Hayes Inc. has not met its burden. As previously stated in the court's discussion of Hayes Inc.'s motion for summary judgment on the validity of the '302 patent, the court finds that neither Hayes Inc. nor Multi–Tech have demonstrated that they are likely to succeed on their claims. The parties' respective analyses were insufficient for the court to make any determination as a matter of law.

clear showing of validity and infringement, a *presumption* of irreparable harm does not arise in a preliminary injunction proceeding.") (emphasis in the original) (footnote and citations omitted)). Second, the evidence before the court indicates that Multi–Tech has sufficient assets to cover the judgment Hayes Inc. alleges it is likely to obtain. Third, Hayes Inc. has not demonstrated that Multi–Tech's alleged infringement has hindered its ability to license the '302 patent or to obtain concessions for such licenses. Fourth, Hayes Inc. has presented no evidence that Multi–Tech sales of alleged infringing products has caused its decline in the market.[26] Finally, Hayes Inc.'s failure to file its motion for a preliminary injunction until approximately three years after the commencement of this litigation is an indication that it will not suffer irreparable harm if the court does not issue a preliminary injunction. The court thus concludes that Hayes Inc.'s inadequate showing on the irreparable harm factor weighs in favor of denying its request for a preliminary injunction.

### C. Balance of Hardships

Hayes Inc. contends that the balance of hardships weighs in its favor because a preliminary injunction would have the effect of preserving the status quo between the parties. Hayes Inc. also contends that Multi–Tech would suffer little hardship from the issuance of a preliminary injunction because it can manufacture modems that do not infringe on the '302 patent invention.

The court disagrees. Hayes Inc. has not demonstrated a likelihood that the acts complained of are unlawful and therefore, a preliminary injunction would alter, and not preserve, the status quo. In addition, prohibiting Multi–Tech from marketing its current line of modems might cause Multi–Tech economic chaos. Balanced against that harm is the harm that would befall Hayes Inc. if its claims were found to be valid. That harm, a longer wait to collect

damages, does not outweigh the harm that Multi–Tech would suffer if the court were to issue a preliminary injunction and subsequently, the jury found the '302 patent invalid or non-infringed. The court thus concludes that the balance of the hardships factor weighs in favor of denying Hayes Inc.'s request for a preliminary injunction.

### D. The Public Interest

Although the public has an interest in protecting the rights that a valid patent secures, "the focus of the ... court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant [or denial] of preliminary relief." *Hybritech*, 849 F.2d at 1458 (footnotes omitted). The public has an interest in ensuring that competition is not stifled by invalid patents. *See Lear, Inc. v. Adkins*, 395 U.S. 653, 663–64, 89 S.Ct. 1902, 1907–08, 23 L.Ed.2d 610 (1969) ("It is as important to the public that competition should not be repressed by worthless patents, as that the patentee of a really valuable invention should be protected in his monopoly ..."). Because Hayes Inc. has not established that it is likely to succeed in showing that its patent is valid, the court concludes that the public's interest in fostering competition weighs in favor of denying Hayes Inc.'s motion for a preliminary injunction.

Based on the foregoing, the court concludes that Hayes Inc. has not made a sufficient showing to warrant the issuance of a preliminary injunction. The court thus denies Hayes Inc.'s motion for a preliminary injunction.

### III. *Multi–Tech's False Advertising and Unfair Competition Claims*

Multi–Tech contends that Hayes Inc.'s advertising and marketing activities are unfair because Hayes Inc. has misrepresented the qualities of both its own modems and Multi–Tech's modems. In particular, Multi–Tech contends that Hayes Inc. misled its

---

**26.** Even if Hayes Inc. had presented evidence on its loss of market share, the fact that it has licensed its '302 patent to numerous other modem manufactures undermines its argument that there is a strong correlation between Multi–Tech's increasing sales and its decreasing sales of computer products.

customers regarding the capabilities of Hayes Inc.'s V–Series modem and that the resulting consumer confusion harmed Multi–Tech's sales and reputation because consumers believed that non-Hayes Inc. products linked to the V–Series modem caused its communication problems. In addition, Multi–Tech contends that Hayes Inc.'s advertising campaign has been misleading. Multi–Tech thus contends that Hayes Inc.'s activities violate (1) Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) injurious falsehood and unfair competition common law; (3) the Minnesota Deceptive Trade Practices Act, Minn.Stat. § 325D.44 *et seq.;* and (4) the Minnesota Unlawful Trade Practices Act, Minn.Stat. § 325D.09 *et seq.* Multi–Tech contends that both money damages and injunctive relief are appropriate remedies for such violations.

Hayes Inc. moves for summary judgment on each of Multi–Tech's unfair competition claims. Hayes Inc. contends that it is entitled to summary judgment on each of those claims because Multi–Tech's responses to its summary judgment motion are based largely on inadmissable hearsay. Hayes Inc. also contends that even if the court considers that hearsay evidence, summary judgment is appropriate on each of Multi–Tech's claims because Multi–Tech has submitted no evidence that Hayes Inc.'s activities have caused it damage. In addition, Hayes Inc. contends that it is entitled to summary judgment on each of the claims because Multi–Tech has provided no evidence that the representations it made are not truthful. Finally, Hayes Inc. contends that summary judgment is appropriate because Multi–Tech has produced no evidence that its patent or trademark are invalid and that it has the right to enforce its valid patent and to promote its products bearing its valid trademark.[27]

### A. Admissibility of Multi–Tech's Supporting Documents

Hayes Inc. contends that the court should not consider a significant portion of the evidence that Multi–Tech submitted in defense of its claims because the evidence it objects to is inadmissable. Hayes Inc. objects to Multi–Tech's exhibits B, C, D, E, F, G, H, I, J, K, L, M, M, N, P, and S in Appendix I, Multi–Tech's supplemental interrogatory response and exhibits D, J, L, M, N, P, and S in Appendix II, and exhibits F, G, V, W, and X in Appendix III. Hayes Inc. argues that the court should not consider those documents because they lack foundation, lack authentication, are hearsay, violate the best evidence rule, are not relevant, or are incomplete. Hayes Inc. also contends that the court should not consider the affidavits of Bruce Anderson and John Friel because those affidavits are hearsay.

 In analyzing Hayes Inc.'s summary judgment motion, the court may consider only the portion of both parties submitted materials that is admissible or useable at trial. *Walker v. Wayne County,* 850 F.2d 433, 434 (8th Cir.1988) (citations omitted). Therefore, Multi–Tech may not rely solely on inadmissible hearsay in opposing Hayes Inc.'s summary judgment motion. *Financial Timing Publications v. Compugraphic Corp.,* 893 F.2d 936, 942 (8th Cir.1990) (citations omitted). Instead, Multi–Tech "must show that admissible evidence will be available at trial to establish a genuine issue of material fact." *Id.* Rule 56 of the Federal Rules of Civil Procedure, however, "does not require an unequivocal conclusion that the evidence will be admissible at trial as a condition precedent to its consideration on a summary judgment motion, nor need the evidence be

---

**27.** Hayes also contends that if the court dismisses the federal Lanham Act claim, the court must dismiss the pendent state law claims. The court disagrees. Under Eighth Circuit law the decision to dismiss Multi–Tech's pendent state law claims is discretionary. *See e.g. Curtis v. Sears, Roebuck & Co.,* 754 F.2d 781, 785 (8th Cir.1985). The court has determined that it will exercise jurisdiction over Multi–Tech's state law unfair competition claims. If jurisdiction is not exer-

cised, Multi–Tech's state law claims may be barred by the Minnesota statute of limitations. Significant delay in this case has already occurred as it is approximately two and one-half years old. Exercising jurisdiction over the state law claims also favors judicial economy because there has been a significant investment of judicial time and resources, and the court is familiar with the complex fact issues involved.

judged on the same basis as evidence at trial." *Reed v. Ford Motor Co.,* 679 F.Supp. 873, 874 (S.D.Ind.1988) (citing *Securities and Exch. Comm'n v. American Commodity Exch., Inc.,* 546 F.2d 1361 (10th Cir.1976); *Corley v. Life and Casualty Ins. Co. of Tennessee,* 296 F.2d 449 (D.C.Cir.1961)).

Beyond its amorphous assertions, Hayes Inc. provides no analysis of which evidentiary rule applies to a particular document. Based on the inadequacy of Hayes Inc.'s analysis, the court will not exclude evidence at this stage of the litigation. In addition, an examination of the documents to which Hayes Inc. objects reveals that Multi–Tech may be able to authenticate and establish the admissibility of those documents at trial. Further, Multi–Tech has submitted other evidence to which Hayes Inc. did not object that will be available at trial to establish a genuine issue of material fact. *Financial Timing Publications,* 893 F.2d at 944 ("[W]hen the party opposing summary judgment offers a significant amount of inadmissible evidence favoring its position ... [the court] is reluctant to grant the motion if the party also has admissible evidence supporting its claim of a genuine issue for trial."). Finally, the court notes that even if there is some merit to Hayes Inc.'s argument, courts generally examine a nonmovant's papers less stringently on a motion for summary judgment than those of the movant. *See e.g. Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 80 (5th Cir.1987) (citing 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2738 at 467 (1983)); *DeCintio v. Westchester County Medical Ctr.,* 821 F.2d 111, 114 n. 4 (2d Cir.1987) (citations omitted), *cert. denied,* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395

(1987). In the event that Hayes Inc. still wants to challenge the admissibility of Multi–Tech's documents at trial, the court will be in a better position to make its determination at that time. *See Corley,* 296 F.2d at 450 ("Admissibility of testimony sometimes depends upon the form in which it is offered, the background which is laid for it, and perhaps on other factors as well."). Accordingly, the court denies Hayes Inc.'s request that the court exclude from its consideration some of Multi–Tech's documents in analyzing its motion for summary judgment on Multi–Tech's false advertising and unfair competition claims.

B. Lanham Act

█ Multi–Tech must prove five factors in order to prevail on its claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[28] Those elements are:

(1) Hayes Inc. made false statements of fact about its own products or Multi–Tech's products in its advertisements;

(2) Those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience;

(3) Such deception is material because it is likely to influence the buying decisions;

(4) Hayes Inc. caused its falsely advertised goods to enter interstate commerce; and

(5) Multi–Tech has been or is likely to be injured as a result of those activities either by direct diversion of sales from itself to Hayes Inc., or by injury to the goodwill its products enjoy with the buying public.

*Alpo Petfoods, Inc. v. Ralston Purina Co.,* 913 F.2d 958, 964 (D.C.Cir.1990) (citations omitted); *Cook, Perkiss & Liehe, Inc. v. Northern California Collection Serv., Inc.,* 911 F.2d 242, 244 (9th Cir.1990).

**28.** Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) provides, in pertinent part, that:

(a) Any person who, on or in connection with any goods or services ... uses in commerce any ... false or misleading description of fact, or false or misleading representation of fact, which—

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, spon-

sorship, or approval of his or her goods, services, or commercial activities by another person or

(2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities

shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

Hayes Inc. contends that the court should dismiss Multi–Tech's Lanham Act claim because Multi–Tech cannot establish injury, the fifth factor. Hayes Inc. contends that beyond unsupported allegations that it has been injured, Multi–Tech has submitted no evidence of any injuries stemming from its advertising and marketing activities. In support of its argument, Hayes Inc. cites the deposition of Thomas Heimerman, Multi–Tech's designated deponent on damages.

> Q. Please describe for us the amount and nature of the damages that Multi–Tech claims to have suffered because of that false advertising that you contend Hayes has committed?
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> A. The topic of amount I believe is the sort of thing that's arrived at by counsel, and expert witnesses, and so forth. As far as the nature, I can address that more specifically.
>
> Q. Let me ask, before you turn to the nature of the damages, whether you can give me any figures at all as to the amount of damages that Multi–Tech contends it has suffered from the alleged false advertisement (sic) and public statements?
>
> A. Again, I have no idea as to how much damage there has actually been. I'm aware of some of it. I'm not aware of all of it.
>
> Q. Tell me whatever you know?
>
> A. As far as arriving at a damage figure, I'm not even sure how that's done in cases like this. We have experts and our counsel who we feel are qualified to take care of that sort of thing. But my focus has certainly been on the nature of the activity.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> Q. Mr. Heimerman, does Multi–Tech contend that any of its damages flow directly from particular advertisements or public statements of Hayes?
>
> A. I believe in my previous answers I made the point that it's the overall affect of all of these things that we feel have resulted in damage; the ads, the statements, press releases, method of marketing, the fact that this has been going on for a long time. We are looking at the total of things, as far as damages go.
>
> Q. Has Multi–Tech attempted to quantify any damages that it contends have resulted from particular advertisements or public statements? You're welcome to explain them. But I think that calls for a yes or no answer.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> A. ... I'm not aware that we have tried to or even felt it was necessary or logical to do so. It's been our position that it's the total of all of this activity that's really at issue.

McKinnie Aff., Exh. G, p. 245–47, 258–59. In addition, Hayes Inc. contends that Multi–Tech's increase in sales from $8.9 million to $59.9 million during the period encompassing the complaint demonstrates that Hayes Inc.'s activities have not injured Multi–Tech. Hayes Inc. thus contends that Multi–Tech's failure and apparent inability to provide quantitative evidence of injury constitutes a fatal flaw in its Lanham Act case and that summary judgment is appropriate because Multi–Tech has failed to produce "enough evidence so that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

Multi–Tech contends that the court should not consider Hayes Inc.'s damage argument because it has retained a damages expert and, by agreement of counsel, that expert has not been deposed. Multi–Tech also contends that even if the court considers the merits of Hayes Inc.'s argument, summary judgment is inappropriate because it has produced sufficient evidence of damages to create a material fact dispute on that issue.

The court finds that Hayes Inc.'s reliance on the fact that Multi–Tech has not demonstrated a quantitative amount of damages at this stage of the litigation is misplaced. To defeat Hayes Inc.'s motion for summary judgment on its claim for monetary damages, Multi–Tech need only show that a fact dispute exists regarding whether

Hayes Inc.'s marketing activities caused actual consumer confusion and, as a result, that it suffered an actual injury such as a loss of profits, sales or goodwill. *See e.g. Resource Developers, Inc. v. Statute of Liberty–Ellis Island Found., Inc.*, 926 F.2d 134, 139 (2d Cir.1991); *Web Printing Controls Co., Inc. v. Oxy–Dry Corp.*, 906 F.2d 1202, 1205 (7th Cir.1990). To defeat Hayes Inc.'s motion for summary judgment on its claim for injunctive relief or some other type of equitable relief, Multi–Tech need only show that a fact dispute exists regarding whether Hayes Inc.'s marketing activities are likely to cause confusion among consumers. *Resource Developers*, 926 F.2d at 139.

Although Multi–Tech's defense of its unfair competition claims is itself somewhat confusing, the court finds that Multi–Tech has presented sufficient evidence of actual consumer confusion to warrant denying Hayes Inc.'s motion for summary judgment based on the damages issue. Evidence suggests that Hayes Inc.'s alleged misrepresentations regarding the capabilities of its V–Series modem have caused consumers to question whether their Multi–Tech products are malfunctioning. That evidence is sufficient to create a fact dispute regarding actual consumer confusion and the likelihood of confusion stemming from Hayes Inc.'s alleged misrepresentations. *See e.g. AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1543–44 (11th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987) (Four examples of consumer confusion sufficient to create a fact dispute regarding actual confusion and "[a]ctual consumer confusion is the best evidence of likelihood of confusion."). The court thus denies Hayes Inc.'s motion for summary judgment on Multi–Tech's Lanham Act claim.[29]

### C. Minnesota Deceptive Trade Practices Act

■ Hayes Inc. also moves for summary judgment on Multi–Tech's deceptive trade practices claim under to the Minnesota Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43–48. Section 325D.44 of that Act provides, in part, that:

Subdivision 1: A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:

(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have ...;

. . . .

(7) represents that goods are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(8) disparages the goods, services, or business of another by false or misleading representation of fact;

(9) advertises goods or services with intent not to sell them as advertised;

. . . .

(13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

The Minnesota Deceptive Trade Practices Act covers false advertising and plaintiffs typically assert claims under that Act in conjunction with the Lanham Act, 15 U.S.C. § 1125(a). Thus, the Minnesota Deceptive Trade Practices Act mirrors the Lanham Act. *See Scott v. Mego Int'l, Inc.*, 519 F.Supp. 1118, 1137 (D.Minn.1981) (such claims are "substantially the same as federal claims").

Hayes Inc. argues that Multi–Tech's state law claim fails for the same reasons

---

**29.** In support of its conclusion, the court also finds that a material fact dispute exists regarding the first three factors that Multi–Tech must establish to succeed on its Lanham Act claim. Regarding the first factor, disputes exist over whether Hayes Inc. misrepresented the capabilities of its V–Series modem and whether it misrepresented the innovativeness of its '302 patent technology and the comparative qualities of its competitors' modems. Regarding the second and third factors, the court has already determined that a dispute exists over whether Hayes Inc.'s representations actually have deceived or are likely to deceive consumers. Further, the court finds that the scope of that deception and whether the alleged deception is likely to mislead consumers is in dispute. Regarding the fourth factor, it is undisputed that the goods in question are in interstate commerce.

that its federal claim fails and therefore, that summary judgment in its favor is warranted. As previously determined, however, Hayes Inc. is not entitled to summary judgment on Multi–Tech's federal claims. Accordingly, the court denies Hayes Inc.'s motion for summary judgment on Multi–Tech's Minnesota Deceptive Trade Practices Act claim.[30]

### D. Common Law False Advertising and Unfair Competition

■ Hayes Inc. also moves for summary judgment on Multi–Tech's common law false advertising and unfair competition claim. Hayes Inc. contends that Multi–Tech's common law claim must fail because common law unfair competition claims are limited to situations in which a party misrepresents the origin of goods, known as "palming off," and the party asserting the claim is able to prove that consumers would have bought from it but for its unfair competitor's actions. Hayes Inc. contends that Multi–Tech's claim does not encompass "palming off" and that even if it did, Multi–Tech cannot prove the necessary damage to sustain such a claim.

The court finds that summary judgment on Multi–Tech's common law unfair competition claim is not warranted because common law unfair competition, in limited circumstances, encompasses more than the narrow tort of "palming off." *See Construction Technology v. Lockformer Co., Inc.*, 704 F.Supp. 1212, 1217–18 (S.D.N.Y. 1989) (finding that a defendant's misrepresentation of the quality of its own goods or a defendant's disparagement of the plaintiff's goods is actionable at common law if the plaintiff can demonstrate actual damage to its business). However, unlike claims under the Lanham Act or the Minnesota deceptive and unlawful trade statutes, to sustain a claim under common law unfair competition, Multi–Tech must prove actual injury by demonstrating that consumers would have bought its modems instead of Hayes Inc.'s modems but for Hayes Inc.'s deceptive advertising or disparaging statements regarding Multi–Tech's modems. *See Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 189 (2d Cir. 1980); *Construction Technology*, 704 F.Supp. at 1217–18. Multi–Tech has not yet made such a showing. Multi–Tech, however, has presented some evidence that Hayes Inc.'s representations confused consumers regarding the capabilities of Multi–Tech's products. The court finds that such evidence is sufficient to defeat Hayes Inc.'s motion for summary judgment. Multi–Tech shall have the opportunity to establish that but for Hayes Inc.'s representations, consumers would have bought its products. The court notes that this will be difficult to do because Multi–Tech is but one competitor in an open market. *See* 2 J. McCarthy, *Trademarks and Unfair Competition*, § 27.1 at 336–37 (1984) ("At common law, the primary obstacle to proving a case for false representations is to prove that some actual injury was proximately caused to the plaintiff-competitor.... [I]f there are numerous sources in an open market, it will be impossible to ascertain whether consumers would have dealt with a particular seller but for the defendant's deceptive advertising." (footnotes omitted)); 1 R. Callmann & L. Altman, *Unfair Competition, Trademark and Monopolies*, § 11.15 at 48 (4th Ed.1981) (in common law product disparagement actions "[t]he complaint must refer with specificity, to the customers who have ceased to do business with the plaintiff because of the disparaging statements."). The likelihood that Multi–Tech might not be able to prove but for causation, however, should not preclude Multi–Tech from having its day in court on its common law claim. Accordingly, the court denies Hayes Inc.'s motion for summary

---

**30.** For the same reasons, Hayes Inc.'s motion for summary judgment on Multi–Tech's claim under the Minnesota Unlawful Trade Practices Act, Minn.Stat. § 325D.13 is denied. Minn.Stat. § 325D.13 provides:

No person shall, in connection with the sale of merchandise, knowingly misrepresent, di-

rectly or indirectly, the true quality, ingredients or origin of such merchandise.

The term "person" extends to business entities. *See Independent School Dist. No. 197 v. W.R. Grace & Co.*, 752 F.Supp. 286, 304 (D.Minn. 1990).

judgment on Multi–Tech's common law unfair competition claim.

### E. Evidentiary Matters Regarding Multi–Tech's False Advertising and Unfair Competition Claims

#### 1. Statute of Limitations

Hayes Inc. contends that at least one of the brochures upon which Multi–Tech relies for support of its Lanham Act claim falls outside the applicable statute of limitations for such claims. *See* McKinnie Aff.Exh.L. A six year statute of limitations applies to Lanham Act actions. *Fox Chemical Co. v. Amsoil, Inc.,* 445 F.Supp. 1355, 1359 (D.Minn.1978). Multi–Tech filed its unfair competition complaint in December 1990. Therefore, Multi–Tech may not rely on advertisements or other alleged misrepresentations of Hayes Inc. that were disseminated prior to December 1984. The court declines to rule on the one specific brochure that Hayes Inc. contends was disseminated prior to December 1984 because the court did not rely on that brochure in denying Hayes Inc.'s motion for summary judgment on Multi–Tech's Lanham Act claim. If Multi–Tech attempts to introduce that brochure at trial and Hayes Inc. can demonstrate that the brochure was disseminated prior to December 1984, the court will rule on that objection at that time.

#### 2. Evidence Regarding Market Share

■ Hayes Inc. contends that even if the court allows Multi–Tech to bring its false advertising and unfair competition claims to trial, Multi–Tech should not be able to use evidence regarding Hayes Inc.'s representations regarding market share to prove its claims. Multi–Tech contends that Hayes Inc. misrepresented its share of the modem market in order to falsely attribute quality to its products and mislead consumers into thinking that they must buy its modems to ensure that they can communicate with other modems. Hayes Inc. contends that the court should exclude any evidence regarding its alleged misrepresentations of its market share because the Lanham Act, the Minnesota Deceptive Trade Practices Act, the Minnesota Unlawful Trade Practices Act, and common law false advertising and unfair competition only encompass statements made about the inherent qualities or characteristics of the products themselves. In support of its argument, Hayes Inc. cites *Frito–Lay, Inc. v. Bachman Co.,* 659 F.Supp. 1129 (S.D.N.Y. 1986). In *Frito Lay,* the defendant counterclaimed that the plaintiff violated the Lanham Act by misrepresenting its share of the market to retailers in order to secure additional shelf space for its product. *Id.* at 1142. The *Frito Lay* court applied the Second Circuit's "inherent quality" test to the defendant's counterclaim. *Id.* at 1142. The court rejected the market share argument because under the "inherent quality" test, only misrepresentations that concern product characteristics are actionable. *Id.* In addition, the court based its opinion on the fact that the claimant did not allege that the retailers to whom the alleged misrepresentations were made were in fact deceived. *Id.* at 1142–43.

The court declines to adopt such a narrow interpretation of the "inherent quality" test. Rather, the court concludes that misrepresentations regarding market share that would lead consumers into believing that a product was superior to a competitor's product are actionable because such representations imply that the product's inherent qualities are superior. *See* J. McCarthy, *Trademarks and Unfair Competition,* § 27:2 at 368 (2d Ed.1984); *see also Vidal Sassoon, Inc. v. Bristol–Myers Co.,* 661 F.2d 272, 277 (2d Cir.1981) (misrepresentation regarding results of consumer tests on a product are actionable under the Lanham Act even though the misrepresentation does not relate to an "inherent quality" of the product); *In re Uranium Antitrust Litigation,* 473 F.Supp. 393, 408–09 (N.D.Ill.1979) (refusing to apply the "inherent qualities" test because it would be impossible to misrepresent the inherent qualities of uranium and because "the [Lanham] Act should be read, at a minimum, to protect competitors from misrepresentations which a defendant makes about its own products and which relate to the principal bases of competition among sellers."). The court thus finds that Multi–Tech may introduce evidence regarding Hayes Inc.'s al-

leged misrepresentations of its market share in order to support its claims.

■ In the alternative, Hayes Inc. argues that Multi–Tech should be prohibited from introducing such evidence because of laches. Hayes Inc. contends that Multi–Tech is basing its argument on press releases issued in 1984 to support its claim and that it is unfair to allow Multi–Tech to proceed with such an argument six years later. "The doctrine of laches is an equitable defense to be applied when one party is 'guilty of unreasonable and inexcusable delay that has resulted in prejudice' to the other party." *Bostwick Irrigation Dist. v. United States*, 900 F.2d 1285, 1291 (8th Cir.1990) (citation omitted). Besides arguing that it has had to incur additional attorneys' fees because Multi–Tech chose not to litigate this issue in the California litigation, Hayes Inc. presents no evidence of prejudice resulting from Multi–Tech's delay in bringing the claim. Accordingly, the court rejects Hayes Inc.'s laches argument and Multi–Tech may introduce timely evidence of Hayes Inc.'s alleged misrepresentations regarding its market share.

### F. Cancellation of Hayes Inc.'s Trademark Registration

Multi–Tech asks the court to cancel Hayes Inc.'s V–Series trademark registration. Multi–Tech contends that cancellation is appropriate because the CCITT used the V–Series description before Hayes Inc. obtained its trademark and the product with which the name is associated, the V–Series Smartmodem 9600, did not incorporate the CCITT V–Series protocol that is necessary to permit communication at 9600 baud.

Hayes Inc. contends that the court should not consider a trademark argument because Multi–Tech did not specifically raise a trademark claim in its complaint. Multi–Tech, however, does ask in its complaint for any relief that the court deems equitable under the circumstances. The court does have the power to invalidate a trademark that is found invalid. Accordingly, the court finds that the validity of the trademark is a valid issue for consideration. However, the record is not sufficiently developed to allow the court to determine the validity of the trademark. Accordingly, the court denies Multi–Tech's request to cancel the V–Series trademark registration.

### G. Defendant Dennis Hayes's Motion for Summary Judgment In the False Advertising and Unfair Competition Case

Hayes contends that the court should dismiss Multi–Tech's false advertising and unfair competition claims against him because Multi–Tech failed to support its claims under the Lanham Act, 15 U.S.C. § 1125(a), the Minnesota Deceptive Trade Practices Act, Minn.Stat. §§ 325D.43–48, the Minnesota Unlawful Trade Practices Act, Minn.Stat. § 325D.13, and common law false advertising and unfair competition. In support of his argument that Multi–Tech failed to sustain its claims, Hayes adopts Hayes Inc.'s arguments set forth in its motion for summary judgment. The court finds that its conclusions regarding Hayes Inc.'s motion in the false advertising and unfair competition case are applicable to Hayes's motion and the court adopts its analysis of those arguments in response to Hayes's motion for summary judgment. Accordingly, the court denies that portion of Hayes's motion for summary judgment based on the arguments that Hayes Inc. made.

In the alternative, Hayes contends that even if the court denies his motion for summary judgment based on his argument that Multi–Tech failed to present sufficient evidence to sustain its claims, the court should nevertheless dismiss Multi–Tech's false advertising and unfair competition claims against him because Multi–Tech presented no evidence that he was responsible for Hayes Inc.'s alleged misconduct.

The court rejects Hayes's alternative argument. Previously, Hayes moved the court for an order dismissing him from the litigation because of lack of personal jurisdiction. The issues surrounding his involvement with Hayes Inc. were briefed and argued in conjunction with that motion.

In holding that personal jurisdiction existed, the court found that Hayes:

[P]ersonally exercises strict control over management decisions at the company, personally controls decisions relating to advertising and publicity, and has implemented a policy whereby he personally approves before distribution all advertisements and promotional literature bearing his name or the name of Hayes, Inc. In addition, Hayes personally holds strategy and status meetings with the company's advertising agency, personally reviews advertisements and press releases before publication and also holds himself out as having authority and control over Hayes, Inc. Thus Hayes has taken an active role in the advertising that allegedly injured plaintiff.

*Multi–Tech Systems, Inc. v. Hayes Microcomputer Products, Inc. and Dennis Hayes*, Cv. No. 4–90–948, slip op. at 3 (D.Minn. May 23, 1991). Hayes did not appeal that order. Hayes also has presented no new evidence or law that would warrant that the court alter its previous findings. Accordingly, the court concludes that Multi–Tech properly added Hayes to its false advertising and unfair competition claims and that Hayes's motion is denied.

*IV. Multi–Tech's Appeal of Magistrate Judge Boline's September 10, 1991, Order*

Multi–Tech appeals two rulings from an order entered by Magistrate Judge Floyd E. Boline on September 10, 1991, in the false advertising and unfair competition case. The first ruling concerns the parties' access to each others' customer list and customers.[31] The second ruling concerns Multi–Tech's request to amend the complaint to add a claim for punitive damages. In order for the court to overrule the mag-

istrate judge's order, Multi–Tech must demonstrate that his rulings were clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Rule 72(a) of the Federal Rules of Civil Procedure; Local Rule 72.1. The court shall consider the contested rulings in turn.

A.  Customer Lists

Hayes Inc. compiled a list of Multi–Tech's customers during its depositions of Multi–Tech's employees. Hayes Inc. contends that it intends to interview Multi–Tech's customers to help it determine the validity of Multi–Tech's claims of confusion and deception. Multi–Tech designated its employees' depositions as "restricted confidential" under the protective order in this case.

Hayes Inc. moved for an order allowing it to contact Multi–Tech's customers. Hayes Inc. also requested that the court downgrade the customer list from "restricted confidential" to "confidential" under the protective order.[32] Multi–Tech filed a motion requesting reciprocal access to Hayes Inc.'s customers. Multi–Tech also opposed Hayes Inc.'s request for an order downgrading its customer list to "confidential" under the protective order. The magistrate judge granted both of Hayes Inc.'s requests. *Multi–Tech Systems, Inc. v. Hayes Microcomputer Products, Inc., and Dennis Hayes*, Cv. No. 4–90–948 at 3–4 (D.Minn. Sept. 10, 1991). The magistrate judge denied Multi–Tech's request for access to Hayes Inc.'s customer list because he determined that Multi–Tech did not make a formal request for that information before the close of discovery. *Id.* at 4. The magistrate judge also denied Multi–Tech's request to keep its customer list designated confidential under the

---

**31.** According to Multi–Tech, the term "customer" refers to individuals or entities such as distributors of its products, resellers of its products, and manufacturing representatives. Such customers have ongoing relations with Multi–Tech for purchase of large quantities of modem products for resale to end users. The term "customer," for the purposes of this appeal, does not include end users of Multi–Tech's products. *See* Multi–Tech's Brief in Opposition to Hayes Inc. and Dennis Hayes's Motion to Compel at 3–

4, *Multi–Tech Systems, Inc. v. Hayes Microcomputer Products, Inc. and Dennis Hayes*, Cv. No. 4–90–948.

**32.** Documents marked "Restricted Confidential" may be disclosed to the attorneys for the parties and their associates but not to the officers of the parties. Documents marked "Confidential" may be disclosed to the attorneys for the parties and their associates and to the officers of the parties.

agreement. *Id.* at 3. The magistrate judge set forth no reasons for downgrading the status of Multi–Tech's customer list. Multi–Tech now appeals the magistrate judge's order.

1. Reciprocal Access to Customer Lists

■■■ Multi–Tech contends that in making his determination, the magistrate judge inappropriately relied on the misrepresentations of Hayes Inc.'s counsel that Multi–Tech had not requested customer identification before the close of discovery. Multi–Tech contends that it obtained identification of some of Hayes Inc.'s customers during a deposition of Dennis Hayes prior to the close of discovery. In addition, Multi–Tech contends that the parties agreed that it could depose additional Hayes Inc. employees after the close of discovery, that those depositions are still pending, and that it intended to ask those deponents for additional identification of customers. Multi–Tech thus contends that the magistrate judge's ruling was clearly erroneous.

The court agrees with Multi–Tech and finds that the magistrate judge's order denying Multi–Tech access to Hayes Inc.'s customer list is clearly erroneous under the circumstances of this case. Granting Multi–Tech access to the customers of Hayes Inc. that it has already discovered during depositions and to the customers that it may discover during future depositions agreed to by the parties will "level the parties' playing field." Hayes Inc.'s customers may have information pertaining to the alleged false and misleading representations that Multi–Tech contends Hayes Inc. made. Allowing Multi–Tech access to such information, even after the close of discovery, will not prejudice or burden Hayes Inc. and will help facilitate a just resolution to the parties' claims. Accordingly, the magistrate judge's order denying Multi–Tech access to Hayes Inc.'s customer list and customers is reversed.

2. Status of Customer Lists

■■■ Multi–Tech contends that the magistrate judge's decision to downgrade its customer list from a "restricted confidential" designation to a "confidential" designation under the protective order is clearly erroneous because the law views customer lists as competitively sensitive trade secret information.[33] In support of its appeal, Multi–Tech cites a number of cases in which courts ruled that a party's customer list could be used by the opposing party only for litigation purposes and could be viewed only by opposing counsel and not the opposing party itself.

Hayes Inc. contends that the magistrate judge's ruling is correct because Multi–Tech has placed its customer information and relationships in issue and that restricting its access to that information will irreparably harm their defense efforts because only Hayes Inc. officers can determine with which customers Hayes Inc. has had contact. Hayes Inc. contends that restricting its officers' access to Multi–Tech's customer list would require its counsel to undertake the onerous burden of contacting each of Multi–Tech's customers.

The court finds that the magistrate judge's ruling is not clearly erroneous. Beyond its assertions that its customer list constitutes sensitive information and that it may be irreparably harmed if Dennis Hayes or any other Hayes Inc. officers are permitted to view its customer list, Multi–Tech failed to set forth any evidence demonstrating that its customer list is not generally known or readily ascertainable and that its customer list provides a demonstrable competitive advantage to it. *See Cherne Indus.*, 278 N.W.2d at 90 (considering such factors as whether the matter was generally known or readily ascertainable

---

**33.** Trade secrets include compilations of information, that when used in one's business, gives a person an opportunity to obtain an advantage over competitors who do not access to such information. *See Burlington N. R.R. Co. v. Omaha Public Power Dist.*, 888 F.2d 1228, 1231–32 (8th Cir.1989) (citing the Restatement of the Law of Torts for the definition of a trade se-

cret); *Cherne Indus., Inc. v. Grounds & Assocs.*, 278 N.W.2d 81, 89–90 (Minn.1979) (trade secrets include a "compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." (citations omitted)).

and whether the matter provided a demonstrable competitive advantage to its owner in determining that the plaintiff's customer list constituted a confidential trade secret). Accordingly, the court affirms the magistrate judge's ruling that Multi–Tech's customer list shall be marked as "confidential" under the protective order. In addition, in keeping with the court's determination that Multi–Tech has the right to contact the customers of Hayes Inc. that it identified through depositions, Hayes Inc.'s customer list shall be marked as "confidential" under the protective order.[34]

### B. Amending Complaint to Add Claim for Punitive Damages

Multi–Tech moved the court for an order extending the time for filing a motion to amend its complaint and allowing it to add a claim for punitive damages. The magistrate judge denied Multi–Tech's requests because its motion to extend time was untimely. *Multi–Tech Systems, Inc. v. Hayes Microcomputer Products, Inc. and Dennis Hayes*, Cv. No. 4–90–948 at 5 (D.Minn. Sept. 10, 1991). The magistrate judge also concluded that even if it were to entertain Multi–Tech's motion to amend, it would deny the motion because Multi–Tech did not set forth prima facie evidence that

Hayes Inc.'s acts demonstrated deliberate disregard for the rights or safety of others. *Id.* at 6.

Multi–Tech contends that it did present prima facie evidence that the defendants deliberately mislead those consumers who purchased the defendants' V–Series Smartmodem 9600. Multi–Tech thus contends that the magistrate judge's ruling is clearly erroneous and should be reversed because a factual dispute exists regarding whether there is sufficient evidence to support a claim for punitive damages.

Multi–Tech also contends that it should not be barred from amending its complaint because it has shown extreme good cause why it failed to move to amend its complaint within the time period established for doing so.[35] Multi–Tech contends that the prima facie evidence of willful indifference is by itself sufficient to establish extreme good cause. In addition, Multi–Tech contends that it could not have moved to amend its complaint within the period established for doing so because it did not discover all the information necessary to make such a claim under Minn.Stat. § 549.-191, the statute that governs amending complaints to add a claim for punitive damages, before the period for amending expired.[36]

---

**34.** Multi–Tech also requested that the court adopt guidelines that the parties could follow in contacting each others' customers. The court declines to adopt such guidelines because guidelines might place too great a burden on the parties' right to garner evidence in support of the prosecution or defense of the claims in this case. The court orders, however, that any contact will be used only for litigation purposes. In addition, the court orders that the parties comply with each others' reasonable requests regarding the contact of customers.

**35.** The scheduling order in this case provides that if *"extreme* good cause" can be shown, amendments to the pleadings will be permitted after the final date for amending pleadings has passed. *Multi–Tech Systems*, Cv. No. 4–90–948 at 2 (D.Minn. May 10, 1991) (emphasis in original).

**36.** Minn.Stat. § 549.191 sets forth the procedural mechanism and evidentiary standard for pleading a claim of punitive damages. Section 549.191 provides, in pertinent part, that

After filing the suit a party may make a motion to amend the pleadings to claim punitive

damages. The motion must allege the applicable legal basis under Section 549.20 or other law for awarding punitive damages in the action and must be accompanied by one or more affidavits showing the factual basis for the claim. At the hearing on the motion, if the court finds prima facie evidence in support of the motion, the court shall grant the moving party permission to amend the pleadings to claim punitive damages.

Section 549.20, Subd. 1(a) provides that in order to add a claim for punitive damages, the claiming party must provide "clear and convincing evidence that the acts of the defendant show a deliberate disregard for the rights or safety of others." Subdivision 1(b) of Minn.Stat. § 549.20 provides that:

(b) A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and: (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or (2) deliberately proceeds

The court finds that the magistrate judge's ruling is not clearly erroneous or contrary to law. Multi–Tech has not presented sufficient evidence to warrant that the court overturn the magistrate judge's finding. *See e.g., Surgidev Corp. v. Eye Technology, Inc.,* 828 F.2d 452, 454 (8th Cir.1987) (discussing its limited role in considering an appeal of a district court order, the court found that the burden is on the objecting party to clearly demonstrate that the fact finder made an error in the factual findings and that the court's "factual findings may not be reversed unless 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed....' Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous...." (citations omitted)). Accordingly, the magistrate judge's ruling that Multi–Tech cannot amend its complaint to add a claim for punitive damages is affirmed.

### V. *Hayes Inc.'s Appeal of the Magistrate Judge's March 19, 1992, Order*

■ On February 24, 1992, Multi–Tech served a subpoena duces tecum on non-party Ziff. Multi–Tech sought the production of Ziff's "free listing verification forms." Ziff sends those forms to computer product manufacturers in order to obtain verification of information regarding products that are to be included in *Data Sources* magazine's product listing. Multi–Tech served its subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure.

Hayes Inc. contends that the subpoena is nothing more than a cloaked discovery request and that the time for discovery closed well before Multi–Tech served the subpoena. Hayes Inc. thus moved to quash the subpoena by filing a motion for a protective order under Rule 26 of the Federal Rules of Civil Procedure. The magistrate judge denied its motion because

to act with indifference to the high probability of injury to the rights or safety of others.

**37.** Hayes Inc. moved the court for permission to file a reply brief in response to Multi–Tech's

"[n]on-party Ziff Communications Company does not oppose production of documents pursuant to the subpoena, and defendants have no standing to challenge it." *Multi–Tech Systems, Inc. v. Hayes Microcomputer Products, Inc. and Dennis Hayes,* Cv. 4–90–948 at 2 (D.Minn. Mar. 19, 1992). Hayes Inc. appeals from the order arguing that the magistrate judge erred in concluding that it lacks standing to challenge abuses of the discovery process under Rule 26 of the Federal Rules of Civil Procedure and that the magistrate judge erred in adopting Multi–Tech's position that its subpoena deuces tecum is not a discovery request.[37] In the alternative, Hayes Inc. requests that the court sua sponte quash the production of documents at issue.

The court finds that the magistrate judge's ruling is not clearly erroneous. Hayes Inc. has not produced sufficient evidence indicating that Multi–Tech's subpoena constituted an untimely discovery request to warrant overruling the magistrate judge's decision. The close of discovery does not prohibit Multi–Tech from serving a subpoena duces tecum upon Ziff, because Ziff is a non-party to the litigation, Ziff is not a subsidiary of Hayes Inc., Ziff is not controlled by Dennis Hayes and the documents requested are not documents within the possession, custody or control of Hayes Inc. In addition, the court will not sua sponte quash the subpoena. Accordingly, the court affirms the magistrate judge's order denying Hayes Inc.'s motion for a protective order.

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Multi–Tech's motion for summary judgment in the patent case is denied;

2. Hayes Inc.'s motion for summary judgment in the patent case is denied except that the court grants summary judgment on that portion of Hayes Inc.'s motion regarding patent misuse;

response in opposition to Hayes Inc.'s appellate brief. The court grants that request and has considered that reply brief in ruling on the appeal.

3. Hayes Inc.'s motion for a preliminary injunction in the patent case is denied;

4. Hayes Inc.'s motion for summary judgment in the false advertising and unfair competition case is denied;

5. Dennis Hayes's motion for summary judgment in the false advertising and unfair competition case is denied;

6. Multi–Tech's appeal of the Magistrate Judge Boline's order dated September 10, 1992, in the false advertising and unfair competition case is granted in part and denied in part; and

7. Hayes Inc. and Hayes's appeal of Magistrate Judge Boline's order dated March 19, 1992, in the false advertising and unfair competition case is denied.